## HUTH v. CRESCENT FORWARDING & TRANSPORTATION CO., Inc.*

### No. 17144.

Court of Appeal of Louisiana. Orleans.

April 10, 1939.

*Rehearing denied April 24, 1939; writ of certiorari denied by Supreme Court May 29, 1939.

674

Dufour, St. Paul, Levy & Miceli, of New Orleans (Leonard B. Levy and Anna Judge Veters, both of New Orleans, of counsel), for appellant.

Joseph Rosenberg and C. F. Dumaine, both of New Orleans, for appellee.

JANVIER, Judge.

Philip G. Huth sustained serious physical injuries and his Chevrolet coupe was almost demolished at about 9:30 o'clock on the morning of December 8, 1937, in an accident in which the other vehicle involved was a truck belonging to Crescent Forwarding & Transportation Company, Ltd., and operated at the time by an employe acting within the scope of his employment. The accident occurred on the elevated roadway or ramp which, paralleling the Mississippi River but on the land or city side of the wharf sheds of the Port of New Orleans, extends in an uptown-downtown direction. This roadway, or ramp, is some 25 or 30 feet wide and is level with the flooring of the wharves, but is elevated about 5 feet above the land on the city side, and, consequently, about 5 feet above the railroad tracks, which are immediately next to it. In the sheds along which the ramp runs there are large openings through which traffic passes to and fro between the ramp and the sheds. Some of these openings are devoted exclusively to traffic entering the sheds and others to traffic departing. The Chevrolet of plaintiff was on this ramp, on its way uptown, and the truck of defendant was making its exit from one of the sheds through one of these doors, which bore a sign marked "exit". It is the contention of plaintiff that, as he was alongside the door and was driving at a moderate speed, the truck suddenly and at considerable speed emerged and struck his car on the left rear wheel and fender and that, because of the terrific impact, he lost control of his car with the result that it proceeded further along the ramp and finally fell over the edge to the railway tracks below.

Defendant maintains that the truck did not crash into the Chevrolet, but that it had been completely stopped, with its front end extending out of the doorway only a few feet when plaintiff, driving his Chevrolet on the wrong side of the ramp and at great speed and without having previously noticed the truck, attempted to dash in front of it and skidded into it and then careened and swerved along the ramp nearly 340 feet and finally fell to the ground below.

In the district court there was judgment for plaintiff for $3,448. Defendant has appealed.

It is thoroughly established that, after the impact, plaintiff's Chevrolet traveled more than 300 feet along the ramp and then fell off it to the ground below. The record contains an admission to the effect that the speed limit on that ramp is "6 or 8 miles" an hour and contains further evidence to the effect that it is actually 6 miles an hour. It is shown, too, that at that point there was a sign reading: "Danger —Speed Limit 6 Miles per Hour". It is inconceivable that, had Mr. Huth been proceeding at any such reasonable speed as 6 miles per hour, he could have traveled more than 300 feet after being struck. In fact, he admits that he was exceeding that limit slightly, but claims that he was driving at "about 8 miles" an hour.

In this connection Mr. Horan, who testified on behalf of plaintiff, gave most unconvincing evidence. At first, in answer to a question by counsel for plaintiff, he said that Mr. Huth "was going at a reasonable speed, maybe 15 or 18 miles per hour". A

few moments later he must have realized that that speed was in excess of the speed limit, for he then said: "He was going slowly—not any faster than—well, I may say may be going a mile or two—well, I would say going about 8 or 9 miles an hour."

Still later he again forgot himself and said that "the Coupe was traveling around 15 or 18 miles an hour. I wouldn't say over that. I don't believe it was going that fast."

As against these statements, there is evidence in the record to the effect that he was traveling at least 25 miles per hour, and there is the physical fact to which we have referred that, after being struck, his car careened and swerved and continued more than 300 feet in the direction in which it had been moving and finally dropped off the ramp altogether.

We find it impossible to believe that the speed of Mr. Huth's car was reasonable.

We next consider the conflict in testimony concerning the movement of the truck. Plaintiff asserts that 'it emerged suddenly and struck his car as it was passing,' while defendant maintains that the truck had come to a complete stop when plaintiff swerved his Chevrolet in an effort to pass around it and skidded, the left rear of the Chevrolet coming into contact with the front spring of the truck. Huth says: "* * * that truck come out, that Crescent Forwarding and Transportation come with a big black buck on there come out and knocked me one lick." ·

Mr. Horan, one of his witnesses, states that the truck did not stop. However, he says that when the truck emerged—in fact, when some 2 or 3 feet of the front part of it was in the roadway—plaintiff was still 65 or 70 feet away and coming at a very moderate speed. If that had been true, plaintiff would have had ample time to stop had he been paying attention to what he was doing and had he been operating the car at reasonable speed.

But we find a great preponderance of testimony in contradiction of the evidence that the truck continued to move until it struck the Chevrolet.

Gaston Thiel, a disinterested witness, not in any way involved, said that "the truck went out slow" and that "he blew his horn and then he stopped" and ·he also stated

that, when the truck stopped, there was about 7 feet of it extending outside the door.

Mixon, an employe of defendant, said that the truck was "stopped dead still" and that "it was just about six feet out of the door".

Gilbert, another employe of defendant, said that the truck had stopped and that "the driver was just about outside of the shed", meaning, no doubt, that the front part of the truck was extending into the roadway when it came to a stop.

Watson, the driver of the truck, said that "I was standing still when he run into the truck", and, when asked how far out into the roadway his truck extended, he said: "Well, from my steering wheel to the front of my radiator—I would say about 6 feet."

It is true that the three last-named witnesses were employes of defendant, but there is nothing parrot-like about their evidence. They differ in minor detail and yet exhibit certainty in the important particulars. They differ, for instance, in their estimates of the time which elapsed between the time at which the truck stopped in the roadway and the moment at which it was struck by the skidding Chevrolet. Some say about three seconds elapsed; one says about ten seconds. But they all agree that the truck had come to a stop and that there was ample time for the Chevrolet to have been brought to a stop had the driver been careful and had he been proceeding at moderate speed.

In a most important detail, the testimony of Mr. Huth and of his principal witness seems to be entirely at variance with the facts. They both state that there were other parked cars alongside the wharf shed and that these probably interfered with the vision of Mr. Huth and prevented his seeing the truck as it emerged. The record overwhelmingly demonstrates that there were no such parked cars in the roadway. In fact, one of plaintiff's witnesses, Mr. Evans, indicated confusion when questioned about "cars parked along the shed" and then showed that there may have been freight cars on the other side of the ramp. But, when his attention was directed to the possibility of automobiles being parked there, he said: "Not automobiles,—because they have men from the Dock Board to see that no automobiles park there."

676

The fact seems to be that the roof of the shed extended over the roadway about four feet and that this afforded some slight protection from the rain which, at that time, was falling. Mr. Huth states that his car had a tendency to skid and we believe that the testimony of defendant's driver is correct when he says that Mr. Huth was approaching slightly under the protection of that shed, so that the two wheels on the left side of the Chevrolet were on the dry part of the roadway. Mr. Huth was thus on the wrong side of the road when he suddenly discovered the stationary truck ahead of him. He was approaching at considerable speed and unquestionably swerved suddenly to the right in an effort to pass around the front of the truck. As a result of this movement his car skidded to its left and the left rear fender and wheel struck the front of the truck a severe blow, damaging the Chevrolet to the extent indicated in the photograph which is in the record.

It is true that our brother of the district court found from the photograph in the record that the truck must have struck the Chevrolet a direct blow, but that same photograph is before us and we cannot agree that only in such way could the damage have been caused. We think that a skidding car, moving sideways into the front of the truck, could have received the damage indicated in the photograph.

 Whether there was any carelessness in the driver of the defendant's truck in driving into the roadway when the Chevrolet was approaching, we have no doubt at all that there was contributory negligence on the part of plaintiff in not having his car under control, in greatly exceeding the speed limit, and in driving along the wrong side of the road without paying attention to what was going on ahead of him.

We fully realize that only questions of fact are involved, but we cannot arise from a reading of the record without concluding that the judgment below is manifestly erroneous and that plaintiff himself was guilty of great negligence.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that plaintiff's suit be and it is dismissed at his cost.

Reversed.